NYLUND v DEPARTMENT OF NATURAL RESOURCES

Docket No. 78-3724. Submitted May 10, 1979, at Marquette.—Decided
　　January 3, 1980. Leave to appeal applied for.

　　In May, 1974, the Natural Resources Commission determined,
　　after protracted review which included public hearings, that it
　　was necessary to prohibit the use in the great lakes of large
　　mesh gill nets by commercial fishermen so as to insure a self-
　　sustaining lake trout population. Rules effectuating that ban
　　were promulgated, said rules including the provision that com-
　　mercial fishermen holding licenses permitting the use of such .
　　nets would have until December 31, 1974, to phase out the use '
　　of such nets and replace them with trap or pound nets. While .
　　extensions of time in which to replace the banned gill nets
　　were granted, all such extensions expired as of June 1, 1976.
　　Charles Nylund and other commercial fishermen holding 1974
　　licenses which permitted the use of large mesh gill nets com-
　　menced an action against the Michigan Department of Natural
　　Resources which sought to enjoin the department from amend-
　　ing, suspending or revoking their 1974 commercial fishing
　　licenses. Plaintiffs alleged that the rules as promulgated only
　　banned the use of large mesh gill nets by those who did not
　　possess a license permitting the use of the same; and, accord-
　　ingly, the amendment of their 1974 licenses was improper.
　　Plaintiffs urged, in the alternative, that the rules as promul-
　　gated were unreasonable. The Delta Circuit Court, Clair J.
　　Hoehn, J., while finding that the rules as promulgated were not
　　arbitrary and capricious, determined that the rules as promul-
　　gated did not actually ban the use of large mesh gill nets by
　　persons authorized to use such nets pursuant to their 1974
　　licenses, and accordingly, determined that the general amend-
　　ment of such licenses by the department, whereby the use of
　　such nets was prohibited, was improper. The trial court granted
　　a permanent injunction enjoining the department from inter-
　　fering with plaintiffs' pursuit of commercial fishing in accor-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 35 Am Jur 2d, Fish and Game § 47.
[2] 2 Am Jur 2d, Administrative Law § 397 *et seq.*

dance with their 1974 licenses. The Department of Natural Resources appeals. *Held:*

1. The administrative rules promulgated in 1974 by the Department of Natural of Resources relative to a ban on the use of large mesh gill nets by commercial fishermen are not arbitrary and capricious. These rules prohibit the continued use of large mesh gill nets by persons holding 1974 licenses permitting the use of large mesh gill nets.

2. The amendment of commercial fishing licenses by the Department of Natural Resources by the elimination of the right to use large mesh gill nets did not violate the individual licensee's right to due process, since the individual licensees were afforded the opportunity to contest the validity of the new restrictions at an administrative hearing, an opportunity which the plaintiffs herein did not exercise.

Reversed.

1. FISH — ADMINISTRATIVE LAW — COMMERCIAL FISHING LAW — DEPARTMENT OF NATURAL RESOURCES — LICENSES — RULES.

The 1974 administrative rules promulgated by the Department of Natural Resources relative to the ban on the use of large mesh gill nets by commercial fishermen are not arbitrary and capricious, and said rules prohibit the continued use of such nets by persons holding prior licenses permitting the use of such nets (1974 AACS R 299.1079).

2. FISH — ADMINISTRATIVE LAW — COMMERCIAL FISHING LAW — DEPARTMENT OF NATURAL RESOURCES — LICENSES — DUE PROCESS.

The amendment of commercial fishing licenses by the Department of Natural Resources whereby the former right to use large mesh gill nets was eliminated did not violate the individual licensee's right to due process, since the individual licensees were afforded an opportunity to contest the validity of the new restrictions at an administrative hearing.

*Green, Renner, Weisse, Rettig, Rademacher & Clark,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman* and *Gregory T. Taylor,* Assistants Attorney General, for defendant.

Before: D. F. WALSH, P.J., and BRONSON and T. M. BURNS, JJ.

D. F. WALSH, P.J. Defendants appeal the September 6, 1978, judgment entered by the Delta County Circuit Court permanently enjoining them from "suspending, revoking, annulling, withdrawing, recalling, cancelling, amending" plaintiffs' 1974 commercial fishing licenses, subject to "any and all statutes and rules of general application presently existing or properly enacted or promulgated hereafter". Plaintiffs are commercial fishermen licensed to use large mesh gill nets before and during 1974. The circuit court further ordered that, pending appellate resolution of this controversy, plaintiffs' use of large mesh gill nets is to be limited to the use allowed under the relevant pre-1974 administrative rule. 1970-1971 AACS R 299.883.

The issue presented to this Court is whether there is a properly promulgated rule which allowed the Director of Conservation (now the Director of Natural Resources, hereinafter referred to as the director) to amend plaintiffs' 1974 commercial fishing licenses to remove from them the authorization to use large mesh gill nets after 1974. The circuit court held that no rule banning the use of large mesh gill nets by those licensed in 1974 to use such nets had been promulgated. We disagree. A review of background facts is necessary to put this controversy in proper perspective.

On November 23, 1976, the Department of Natural Resources (DNR) filed an administrative complaint against the plaintiffs seeking to amend the commercial fishing licenses of each plaintiff to prohibit commercial fishing with large mesh gill nets. The administrative hearing was held in February 1977. Asa Wright, head of the Great Lakes

section of the fisheries division of the DNR, testified at length concerning the need for prohibition of large mesh gill net commercial fishing. According to Mr. Wright, the major cause for the decline of fish populations in the Great Lakes and the disappearance of such species as lake trout has been over-exploitation by commercial fishermen. The DNR has undertaken to redevelop a self-sustaining population of lake trout in the Great Lakes. Large mesh gill nets are nonselective; many species closed to commercial fishing, such as lake trout, are inadvertently caught in the gill nets of commercial fishermen. Fish which become entangled in gill nets have a very low survival rate. The nonselective nature of gill nets is obstructing the goal of reestablishing a self-reproducing lake trout population. Overlap between the habitat and spawning areas of such species as whitefish and those of lake trout results in large incidental catches of the protected lake trout.

Mr. Wright further testified that there are prudent and feasible alternatives to the use of large mesh gill nets for commercial harvest of whitefish and other species in areas where large mesh gill nets have been authorized in the past.

John Scott, chief of DNR's fisheries division, also testified at the administrative hearing. He described the lake trout repopulation program, which began in 1965. By 1967, it was apparent that lake trout were being killed in gill nets. The fisheries division's suggested ban on large mesh gill nets in the shallow waters of the Great Lakes was rejected by the Natural Resources Commission (hereinafter referred to as the commission). In 1968, the Legislature authorized the DNR director to, *inter alia,* limit commercial fishing licensees to certain types of gear. MCL 308.1b(2)(d); MSA

13.1491(2)(2)(d). In 1970, the Great Lakes Zone Management Plan was adopted by the DNR. 1970-1971 AACS R 299.883. Strict controls were placed on the use of gill nets in certain areas of the Great Lakes.

Mr. Scott described the Zone Management Plan as a compromise between commercial and recreational fishing interests. Because the lake trout repopulation program did not show signs of success under the plan, the fisheries division once again, this time in June 1973, proposed to the commission that gill net fishing be banned in Lakes Superior and Michigan. The goal was "to eliminate the nonselective gear, convert the fishery to selective gear, and finish the job of restoring most of the fish population in the Great Lakes". The Great Lakes fishery advisory committee [MCL 308.1d; MSA 13.1491(4)] also recommended to the commission, in 1973, that large mesh gill nets be banned.

The commission considered the proposed ban at its July, 1973, meeting. Commercial fishermen were notified of the meeting and were there to voice their objection to the proposal. The commission deferred decision and asked the fisheries division to make further studies of alternatives to complete ban.

The commission ultimately accepted the fisheries division's conclusion that there were no feasible alternatives to complete ban which would allow restoration of the fish populations of the Great Lakes. Three public hearings were held at different locations in the state. The commission gave tentative approval to the proposal and submitted the proposed rules to the joint rules committee of the Legislature, after securing approval of the proposed rules from the legislative service bureau

and the Attorney General. The joint committee held two public hearings on the proposed rules. The committee voted 5 to 2 against approval of the rules. A majority of the Senate also voted against the rules. In the House, however, the joint resolution disapproving the rules was rejected. The commission, therefore, adopted the rules in May 1974. They took effect on June 10, 1974. 1974 AACS R 299.1071 through 299.1079.[1]

According to Mr. Scott, although Rule 299.1078 contemplated a phaseout of gill nets to be completed by December 31, 1974, the DNR agreed to grant extensions to those fishermen who demonstrated inability to make the required conversion before that date. This agreement resulted from a lawsuit, filed on behalf of commercial fishermen, challenging the time schedule set forth in the rule. Although 1975 licenses did not authorize the use of large mesh gill nets, the DNR delayed enforcement of the ban to allow reasonable time for conversion to other gear. On November 28, 1975, all commercial fishermen whose 1974 licenses had authorized them to use gill nets were notified that no further extensions would be granted for compliance with the 1974 rules. By June 1, 1976, all time extensions had expired. Each noncomplying commercial fisherman was given an opportunity at an informal hearing to explain why he or she should be given further extension. Plaintiffs did not appear at these hearings.

The administrative hearing examiner found that plaintiffs were not in compliance with Rules 299.1071 to 299.1079. He recommended amendment of their commercial fishing licenses. The commission agreed, finding that the rules prohibited the

---

[1] See 1969 PA 306, § 45, as amended by 1971 PA 171, § 1, which set forth the rule adoption procedures in effect at the time the DNR's 1974 gill net rules were being developed.

use of large mesh gill nets. Rule 299.1078, according to the commission, established a time schedule whereby those commercial fishermen previously authorized to use large mesh nets could convert to other authorized gear. The commission ordered that all provisions of plaintiffs' licenses which authorized the use of large mesh gill nets in the Michigan waters of Lakes Superior or Michigan be suspended. Each license was amended to prohibit large mesh gill net fishing in those waters.

Plaintiffs filed complaint on March 4, 1977, in Delta County Circuit Court. With regard to large mesh gill nets, plaintiffs alleged, *inter alia,* that the amendment of their 1974 commercial fishing licenses, which allowed use of large mesh gill nets, to prohibit those nets and to require conversion to other gear was "arbitrary, capricious, and unreasonable, and unnecessary to the preservation of the fish sought to be protected".

Asa Wright and John Scott testified at the November 1977 trial. On behalf of plaintiffs, two licensed commercial fishermen testified that they took very few lake trout as incidental catches in their gill nets and that impoundment gear could not be fished successfully throughout the year. The manager of the Michigan Fish Producers Association spoke of the adverse economic effects of banning commercial gill net fishing. A Canadian commercial fisherman described the Canadian alternative to prohibition—a quota system.

At the close of the November 1977 proceedings, counsel for plaintiffs argued that there was no "rule of general application" prohibiting large mesh gill net fishing. He argued that the 1974 rules only prohibited gill net use by persons not licensed to use gill nets and that, since plaintiffs had been licensed to use them, amendment of

their licenses was improper. According to plaintiffs' counsel, individual consideration must be given to each licensee before his license can be amended. Alternatively, he argued that, even if there was a rule of general applicability banning gill nets, such a rule would be unreasonable.

The circuit court identified the antagonistic positions taken by the DNR and the commercial fishermen regarding a prohibition against gill nets but "decline[d] the invitation to decide between competing social policies". The trial court's opinion indicates that it employed the proper standard of review. MCL 24.306; MSA 3.560(206). The trial court found that gill nets are a significant factor in the decline of lake trout population in the Great Lakes and that therefore the DNR prohibition of such nets was not without a basis in reason. The control of this significant factor was not arbitrary or capricious. Reestablishment of the lake trout population, according to the trial court, is a desirable result.

After rejecting plaintiffs' challenge to administrative prohibition of large mesh gill net fishing, the trial court identified the sole remaining issue as whether plaintiffs' licenses had been properly amended. The court reviewed the rule-making procedures in effect at the time of proposal and adoption of the 1974 rules. The rules had been adopted pursuant to the statutorily prescribed procedures. The court observed that licensees are entitled to due process protection when agencies seek to amend their licenses. In addition, noted the trial court, commercial fishing licensees have a statutory right to have their licenses renewed annually, MCL 308.1b(5); MSA 13.1491(2)(5). Conceding that the DNR, by adopting "a rule of general applicability", could amend commercial fishing licenses

and that the DNR has the right to prohibit gill net fishing, the court found that the DNR had attempted merely to amend individual licenses "instead of adopting a rule of general application which would give the fishermen the right to be heard before the Legislature and have the Legislature consider their position". Rule 299.1074 banned the use of gill nets except by licensees. Rule 299.1078, according to the court, provided only that persons licensed to use gill nets could lose that right *"if and when* rules to that effect are promulgated in accordance with the Administrative Procedures Act". (Emphasis in original.) The trial court cited, in particular, Rule 299.1078(8). According to the court, Rule 299.1078 merely established a "method for the elimination of gill nets" and did not actually ban use of these nets by persons authorized to use them under their 1974 commercial fishing licenses. The trial court entered a permanent injunction enjoining the DNR from interfering with plaintiffs' pursuit of commercial fishing in accordance with their 1974 fishing licenses.

The relevant rules, the validity and applicability of which the circuit court was asked to determine, were adopted in 1974 and provided as follows:

"R 299.1071. Commercial fishing license; application; eligibility of applicant.

"Rule 1. (1) An application for a commercial fishing license shall be made not less than 30 days before fishing operations are expected to commence.

"(2) To be eligible for a license, an applicant shall have been issued a Michigan commercial fishing license for the immediately preceding year.

"R 299.1072. Areas closed to commercial fishing.

"Rule 2. Except as provided in a license issued by the director or in a research permit issued by a representative of the director, it is unlawful to use gill nets, trap

nets, pound nets, seines and set hooks in the following described waters:

\* \* \*

[Certain areas in Lakes Superior, Michigan, and Huron listed as closed to commercial fishing.]

\* \* \*

"R 299.1074. Areas and depths for use of commercial fishing devices; size of meshes in gill nets.

"Rule 4. Including the statutory prohibitions of sections 2, 3, and 30a to 45 of Act No. 84 of the Public Acts of 1929, as amended, being sections 308.2, 308.3 and 308.30a to 308.45 of the Michigan Compiled Laws; and by the provisions of section 1 of Act No. 179 of the Public Acts of 1935, section 1 of Act No. 180 of the Public Acts of 1931, as amended and section 1 of Act No. 92 of the Public Acts of 1931, being sections 308.141, 308.151 and 308.161 of the Michigan Compiled Laws, it is unlawful to use gill nets, trap nets, pound nets, seines and set hooks, except in the manner, time, area and depths hereinafter prescribed or as provided in a license issued by the director or in a search permit issued by a representative of the director:

### LAKE SUPERIOR
"(a) Gill nets with meshes 2-1/2 inches to 3 inches, stretch measure, may be used in depths greater than 60 fathoms if the lead lines of the gill nets are set on the bottom.

"(b) Trap nets and pound nets may be used in depths less than 15 fathoms in Lake Superior January through October and during December.

### LAKE MICHIGAN
"(c) Trap nets and pound nets may be used in depths less than 15 fathoms in Lake Michigan January through October and during December, except trap nets and pound nets may be used only for taking smelt and alewife January through May in waters north of a line extending from the mouth of the Ford river in sections 21 and 22, T38N, R23W to Peninsula Point in section 24, T38N, R21W, Delta county.

"(d) Gill nets with meshes 2-1/2 inches to 3 inches,

stretch measure, may be used in depths greater than 40 fathoms north of a line extending due west from Grand Haven harbor; and in depths greater than 30 fathoms south of a line extending due west from Grand Haven harbor.

\* \* \*

"R 299.1077. Areas licensees permitted to fish; limitations on gear.

"Rule 7. (1) A licensee may fish only within a radius of 50 miles of the port specified in the license and all fish shall be landed at that port.

"(2) A licensee shall conduct his commercial fishing operation only with the kind and amount of gear specified in his license or research permit.

"R 299.1078. Replacement of gill nets with trap and pound nets.

"Rule 8. (1) Persons whose gill net fishing operations are prohibited or restricted by these rules and who intend to continue to fish commercially in the waters of this state may replace their gill nets with trap or pound nets. Any person who intends to replace his gill nets with trap or pound nets may continue to use his gill nets where otherwise prohibited by these rules only during 1974 by filing an appropriate application for replacement within the prescribed time designated by the director. Persons licensed to use gill nets in combination with trap or pound nets when these rules become effective may continue to use gill nets only during 1974 where otherwise prohibited by these rules. A person authorized to use gill nets only during 1974 where otherwise prohibited by these rules shall use gill nets only under the provisions of a permit or license issued by the director, the provisions of which shall be substantially the same as those contained in the person's 1974 commercial fishing license. This subrule does not apply to those persons presently licensed to use trap or pound nets only or gear other than gill nets.

"(2) To be eligible to replace gill nets with trap or pound nets, a person shall:

"(a) Have held a commercial fishing license in 1971, 1972 and 1973 to use gill nets in the waters of this state.

"(b) File an application in accordance with instructions on a form provided by the director within 15 days after the effective date of these rules.

"(3) Failure of a person to comply with subsection (b) of subrule (2) is evidence that the person no longer wishes to fish commercially and the director shall notify the person to cease and desist using gill nets where prohibited by these rules. The person may voluntarily terminate his license at that time or action will be taken to revoke the license if the person continues to use gill nets where prohibited by these rules.

"(4) A person whose application has been properly filed shall be notified and shall request to have his commercial fishing license amended to authorize replacement of gill nets with trap or pound nets.

"(5) A person whose license has been amended pursuant to subrule (4) shall provide progress reports on his gill net replacement to the director. Progress reports required by this subrule shall be submitted as follows:

"(a) Within 30 days of the effective date of the license amendment, a person shall submit to director or his representative evidence in the form of purchase orders for gear and materials or other satisfactory information that clearly demonstrates that he has commenced replacing his gill nets with trap or pound nets.

"(b) Within 90 days of the effective date of the license amendment, a person shall submit to the director or his representative a progress report that clearly demonstrates his continued progress in replacing his gill nets with trap or pound nets.

"(c) By December 31, 1974, all persons who have been authorized to replace gill nets with trap or pound nets shall submit to the director satisfactory evidence of having totally completed the replacement.

"(6) A person failing to meet the requirements of subrule (5) shall show cause to the director why the requirements have not been met; and unless authorized by the director, the person shall not be subsequently licensed to fish commercially in the waters of this state.

"(7) A person electing to replace his gill nets pursuant to this rule shall be licensed to use no more than 10 trap nets or 10 pound nets, or any combination thereof

so long as the total number of nets does not exceed 10 nets.

"(8) If the director finds it necessary to protect the fisheries resources of this state and rules are promulgated as required by law, the use of gill nets as provided by these rules shall be prohibited or restricted."

MCL 308.22; MSA 13.1513, provides that it is unlawful for anyone to fish using any kind of net without having a license to do so. See Rule 299.1077, *supra.*

Plaintiffs interpret the above rules to allow their continued use of large mesh gill nets. The rules, they argue, prohibit such nets *except as provided in a license.* See Rule 299.1074. Since licenses possessed by plaintiffs at the time the rules were adopted authorized them to use these nets, the current ban, they contend, does not apply to them. Further echoing the circuit court's ruling, they rely on MCL 308.1b(5); MSA 13.1491(2)(5), which provides:

"Any licensee presently licensed at the time this section becomes effective [i.e., November 15, 1968] shall have the right to have his license renewed from year to year by the director of conservation if such licensee continues to meet the qualifications set forth in this section and the qualifications specified in any rules promulgated under this section regardless of the determination of the number of licenses to be issued hereunder. Such licenses so issued shall not be transferable without the permission of the director."

If the DNR had adopted only Rules 299.1072 and 299.1074, we would perhaps be persuaded to agree with plaintiffs. However, the DNR also adopted, at the same time, Rule 299.1078. The plain meaning of that rule, in the context of the entire group of 1974 rules, is that those whose 1974 licenses authorized the use of large mesh gill nets were to

convert to trap or pound nets. Absent the abandonment of the use of large mesh gill nets, these licensees were to cease commercial fishing operations. Rule 299.1078 comprehensively addresses the situation of 1974 licensees authorized to use gill nets. This rule does not, contrary to the circuit court's ruling, contemplate further rule-making to effectuate a ban against use of large mesh gill nets by plaintiffs. Rule 299.1078's phrase "where otherwise prohibited by these rules" refers to and incorporates the preceding rules to the extent that those rules prohibit gill nets of certain sizes and in certain areas. Rule 299.1078(8) merely authorizes the director to prohibit or restrict gill net fishing more extensively than already provided in the 1974 rules. For example, the director could ban gill nets with meshes of stretch measures from 2-1/2 to 3 inches in depths greater than 60 fathoms in Lake Superior or could prohibit or further restrict the use of small mesh gill nets in Lake Michigan. See Rule 299.1074(a) and (d). Indeed, in 1976, Rule 299.1074 was amended to allow the use of the gear described in Rule 299.1074(d) "only at such times as to coincide with an open season on chubs established by the natural resources commission". 1976 AACS R 1074(1)(d).

In *Department of Natural Resources v Seaman,* 396 Mich 299; 240 NW2d 206 (1976), the Supreme Court held that MCL 308.1b(2); MSA 13.1491(2)(2) does not unconstitutionally delegate legislative authority to the DNR. That provision authorizes the DNR director to place restrictions—*e.g.,* regarding type of gear—on commercial fishing licenses. The Court also upheld the director's prohibition, by rule, of the use of gill nets with mesh sizes under 8 inches in certain fishing zones. Development of specific regulations by administrative agencies,

noted the Court, must be accompanied by due process protection to minimize opportunities for abuse of discretion and to provide adequate protection to the interests of those to be affected by the regulations. The Court found compliance with due process requirements in the development of the general commercial fishing regulations. Individual fishermen had also been given an opportunity to contest particular restrictions placed on their licenses. *Id.* at 313-314, 318-321.

We find that the requirements of due process have been satisfied with regard to development of the 1974 rules and the amendment of plaintiffs' licenses. It is not disputed that several public hearings were held, after proper notice to interested parties, before final adoption of the rules.

In addition, when the DNR filed its administrative complaint seeking amendment of the licenses held by plaintiffs, each plaintiff was given an opportunity to appear and contest restrictions placed on his or her license. At the beginning of the administrative hearing, counsel for plaintiffs insisted that the hearing examiner determine "the validity of the prohibition against the use of large mesh gill nets enacted and sought to be enforced by the Department". Counsel for the DNR said that he had no objection to letting plaintiffs' counsel use the hearing as a forum to persuade the commission to modify its rules. He expected the hearing to be a long one, since many fishermen were involved. He stated the DNR's desire "to afford all due process of law to the fishermen". Although the hearing examiner had previously stated, and reiterated at the hearing, that he did not feel he had authority, in this particular hearing, to determine the validity of the gill net rule, he nonetheless expressly stated that he would not

preclude plaintiffs from presenting evidence on that issue. Plaintiffs' counsel withdrew from the hearing. The sole witnesses at the hearing were those presented by the DNR.

Plaintiffs were never prohibited from presenting evidence as to why the licenses of each individual plaintiff should not be amended to reflect the ban on large mesh gill net fishing. Instead of taking advantage of this opportunity to contest restrictions, see *DNR v Seaman, supra,* 314, plaintiffs chose rather to seek a declaratory ruling in circuit court regarding the validity of a large mesh gill net prohibition. MCL 24.264; MSA 3.560(164). As discussed *supra,* the circuit court did not agree that a ban on this fishing gear was unreasonable, arbitrary or capricious. Because of plaintiffs' voluntary absence from the license amendment proceeding, the hearing examiner properly proceeded in their absence. MCL 24.291(1); MSA 3.560(191)(1), MCL 24.272(1); MSA 3.560(172)(1).

We find that plaintiffs' rights to due process protection were observed in the development of the 1974 rules and in the amendment of their individual licenses. We also find that the 1974 rules apply to plaintiffs and that, under Rule 299.1078, their continued use of large mesh gill nets in their commercial fishing operations is prohibited.

The permanent injunction entered by the circuit court is set aside. The cease and desist order of the Natural Resources Commission is reinstated.